# APPENDIX – INDICTMENTS IN CASES
# CITED IN GOVERNMENT'S RESPONSE

## TABLE OF CONTENTS

1.  United States v. Awan,

    No. 06-154(S-2) (CPS) (E.D.N.Y.)……………………………00G

2.  United States v. Hassan,

    No. 5:09cr216 (E.D.N.C.)……………………………………...00J

3.  United States v. Hassoun,

    No. 0:04-cr-60001-MHC (S.D.Fla.)……………………….…..02H

4.  **United States v. Mehanna**,

    No. 1:09-cr-10017-GAO (D.Mass.)…………………………..05I

5.  United States v. Satter and Stewart,

    No. 02 Cr. 395 (S.D.N.Y.)…………………………………......094

APPENDIX 54

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Cr. No. 09-CR-10017-GAO |
| | ) Violations: |
| | )   18 U.S.C. §2339B |
| | )   Material Support to Designated |
| | )   Terrorist Organization |
| | )   18 U.S.C. §2339A |
| | )   Material Support to Terrorists |
| V. | )   18 U.S.C. §956 |
| | )   Conspiracy to Kill in a |
| | )   Foreign Country |
| | )   18 U.S.C. §371 |
| TAREK MEHANNA | )   Conspiracy |
| and | )   18 U.S.C. §1001(a)(2) & (3) |
| AHMAD ABOUSAMRA | )   False Statements |
| | )   18 U.S.C. §§ 981(a)(1)(C) & (G) |
| | )   28 U.S.C. § 2461(c) |
| | )   Forfeiture |

**SECOND SUPERSEDING INDICTMENT**

The Grand Jury charges that:

COUNT ONE
18 U.S.C. §2339B
Conspiracy to Provide Material Support or Resources to
a Designated Foreign Terrorist Organization

Beginning in or about 2001, and continuing until on or about

the date of the return of this indictment, the exact dates being

unknown to the Grand Jury, in the District of Massachusetts and

elsewhere, the defendants,

TAREK MEHANNA, and
AHMAD ABOUSAMRA,

each defendant being a national of the United States, did

unlawfully and knowingly, conspire and agree with each other and

with others known and unknown to the Grand Jury to provide

material support and resources, as that term is defined in 18

U.S.C. §2339A(b), including property, services, currency and

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 3 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 2 of 40
APPENDIX 55

monetary instruments, training, expert advice and assistance, facilities and personnel, to a foreign terrorist organization, namely al Qa'ida, knowing that al Qa'ida was a designated terrorist organization under 8 U.S.C. §1189, and that al Qa'ida had engaged in and was engaging in terrorist activity and terrorism, as those terms are defined in 8 U.S.C. §1182(a)(3)(B) and 22 U.S.C. §2656f(d)(2).

<u>Overt Acts</u>

In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed and caused to be committed, in the District of Massachusetts and elsewhere, the following overt acts, among others:

1.     In or about April 2002, AHMAD ABOUSAMRA traveled to Pakistan with the intent to receive military-type training at a terrorist training camp so that he could enter Afghanistan to join with others to fight and kill United States nationals.

2.     In or about August 2002, AHMAD ABOUSAMRA called a telephone number in Pakistan in order to speak with a man he knew as Abdulmajid, whom ABOUSAMRA had met in Pakistan and who was going to help ABOUSAMRA find a terrorist training camp that would accept him.

3.     In or about early April 2006, ABOUSAMRA called "two phone companies," for the purpose of trying to find the telephone number of Abdulmajid from his "old [telephone toll] records."

2

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 4 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 3 of 40
APPENDIX 56

4.    At various times between 2001 and 2004, AHMAD ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury), in order to inspire one another and others to engage in violent jihad and martyrdom, watched jihadi videos, including some al Qa'ida videos, such as *State of the Ummah*, and videos depicting battles involving al Qa'ida, with each other and with others, including Daniel Maldonado.

5.    At various times, MEHANNA and several individuals, including a person N and D (whose true names are known to the Grand Jury), and ABOUSAMRA, discussed efforts to create like-minded youth in the Boston area.  For example, in describing his efforts involving one of the individuals (he names), on or about February 1, 2006, MEHANNA wrote "I lent him the state of the ummah cd ... and after he saw it ... he told me ... 'Things are much clearer now.'"  In another conversation on or about April 15, 2006, MEHANNA was exasperated at how few there were in the area who agreed with his interpretation of the faith.  MEHANNA then went on to say that he was "working on it" and that he was trying "one-on-one efforts like, befriend a person slip stuff in here and there," to which N wrote, "recruit, brainwash," and MEHANNA agreed.

6.    At various times beginning in or about the fall of 2002, through in or about the fall of 2004, TAREK MEHANNA and AHMAD ABOUSAMRA discussed with Daniel Maldonado, a then recent

3

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 5 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 4 of 40
APPENDIX 57

convert to Islam, their view of the religious justification for suicide bombings, the killing of civilians, including specific terrorist attacks by al Qa'ida, and "the glory of dying on the battlefield for Allah."

7. In or about 2003, AHMAD ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury) discussed attending a terrorist training camp so that they could then enter Iraq, join with others to fight and kill United States nationals. They researched various ways to enter Iraq through neighboring countries.

8. In or about October 2003, AHMAD ABOUSAMRA traveled to Sacramento, California to meet with J (whose true name is known to the Grand Jury) for advice on where to go and whom to see in Yemen to receive terrorist training. Among other things, ABOUSAMRA and J discussed that J had been in Pakistan and Yemen in or about the late 1990s.

9. In or about October 2003, AHMAD ABOUSAMRA gave $5,000 to J (whose true name is known to the Grand Jury).

10. In or about October 2003, AHMAD ABOUSAMRA told J (whose true name is known to the Grand Jury) that he (ABOUSAMRA) wanted to go to Yemen to receive military-type training at a terrorist training camp so that he could then go to Iraq and join with others to fight and kill United States nationals.

11. In or about late 2003, or January, 2004, AHMAD

4

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 6 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 5 of 40
APPENDIX 58

ABOUSAMRA placed a telephone call to J (whose true name is known to the Grand Jury) concerning the imminent trip that ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury) were to take to Yemen to receive military-type training at a terrorist training camp.

12.  On or about February 1, 2004, TAREK MEHANNA, AHMAD ABOUSAMRA and K (whose true name is known to the Grand Jury) left the United States and flew to the United Arab Emirates ("U.A.E."), for the purpose of continuing on to Yemen to receive military-type training at a terrorist training camp.

13.  On or about February 3, 2004, in the U.A.E., ABOUSAMRA and MEHANNA accepted a few thousand dollars from K (whose true name is known to the Grand Jury), who was going to return to the United States.  MEHANNA and ABOUSAMRA were leaving for Yemen where they intended to receive military-type training at a terrorist training camp.

14.  On or about February 4, 2004, TAREK MEHANNA and AHMAD ABOUSAMRA flew from the U.A.E. to Yemen for the purpose of receiving military-type training at a terrorist training camp.

15.  On or about February 13, 2004, AHMAD ABOUSAMRA entered Iraq and traveled to Fallujah, Iraq, for the purpose of joining others in fighting and killing United States nationals.

16.  On or about February 2, 2006, MEHANNA and S (whose true name is known to the Grand Jury) embraced that their activities

5

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 7 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 6 of 40
APPENDIX 59

established them as the "media wing" of al Qa'ida in "raafidayn" [Iraq]. S, referring to the translation and distribution of (for example) messages from and about al Qa'ida leaders, and other media intended to inspire participation in violent jihad, told MEHANNA: "we need to continue with these efforts with the media it bearing ... its fruits." In another communication in early February 2006, MEHANNA wrote "I just hope [a translation] leads to action."

17. In or about early 2006, MEHANNA created and/or translated, accepted credit for authoring, and distributed text, videos and other media, to inspire others to engage in violent jihad, including, but not limited to, authoring and distributing, a pro-suicide operation poem entitled "Make Martyrdom What you Seek," planning to distribute a translation of a transcript of a video known as "Wa Yakoon," which contains a caption "The Media Front" of "The Organisation of al Qaa'edah in the Land of Iraq...," and providing and directing the insertion of (among other things) subtitles and computer graphics for a video entitled the "Expedition of Umar Hadid," also referred to as "Ghazwah Umar Hadeed" or "GUH." On or about February 7, 2006, during an online conversation, MEHANNA described Umar Hadid as a terrorist leader in Fallujah, Iraq, who was associated with Abu Musab al-Zarqawi, the leader of al Qa'ida in Iraq. The GUH video is captioned "A video released by the al-Qaidah Network in the

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 8 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 7 of 40
APPENDIX 60

land of the two rivers," i.e., Iraq, and contains, among other things, combat footage from Iraq and footage of Musab al-Zarqawi speaking in the beginning of the video and Usama bin Laden at the end of the video, that is over an hour long.

18. On or about April 4, 2006, MEHANNA and ABOUSAMRA discussed translation from the Umar Hadid video and the impact of jihadi media on the recruitment of individuals to al Qa'ida. MEHANNA agreed with ABOUSAMRA that the best recruitment tool was to distribute inspirational media depicting great suffering, and it would "increase AQ [al Qa'ida] membership a billionfold."

19. On or about February 6, 2006, MEHANNA sought out online internet links to tribute videos to the September 11, 2001 hijackers, who he glorified by referring to them as the "19 martyrs." When MEHANNA was told by S (whose true name is known to the Grand Jury) that the link was no longer available, MEHANNA told S that "I have the cd," and asked if there was "any quick way to get it online?"

20. On or about January 30, 2006, during an online communication, MEHANNA asked S (whose true name is known to the Grand Jury), (whose screen name in Arabic translates to "May Allah make Al-Qa'ida your absolute master" or "May Allah make al Qa'ida your supreme ruler") how to "transfer files ... from one computer to another ... thru dsl networking." After instructing MEHANNA how to do it, S warned: "its a security risk though i

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 9 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 8 of 40
APPENDIX 61

[sic] would disable as soon as u [sic] are done what is needed."

21.   On or about April 1, 2006, MEHANNA completed translation of *39 Ways to Serve and Participate in Jihad*, which was intended to incite people to engage in violent jihad.

22.   On or about April 9, 2006, during an online conversation with S (whose true name is known to the Grand Jury), MEHANNA stated that he hoped his translation of *39 Ways to Serve and Participate in Jihad* "makes an impact," and they discussed the comparison that had been made to the impact of such publications as *Mein Kampf* and *The Anarchist's Cookbook*.

23.   On or about April 2, 2006, MEHANNA asked ABOUSAMRA how to shield his identity from the metadata on media that he was translating.  ABOUSAMRA suggested that MEHANNA use the Rich-Text File format (.rtf) as opposed to the Microsoft Word format, and cited to the fact that the Minbar website which was the media outlet for al Qa'ida in Iraq predominantly used the same text-file format.

24.   On or about April 28, 2006, during an online conversation, MEHANNA told A (whose true name is known to the Grand Jury) (one of the individuals MEHANNA was trying to influence to support violent jihad) of his [MEHANNA's] admiration and love for Usama bin Laden, and admitted: "I look to him ... as being my real father, in a sense. ... every time ... I see him speak ... or read anything about him ... I love him ... more than

I did before ... he's the reason ... I started practicing."
MEHANNA further explained "even Abu Musab [al Zarqawi] ...
considers him [Usama bin Laden] his Skaykh."

25.  In or about July 2006, MEHANNA distributed a video to
multiple associates, describing it as depicting the aftermath of
the retaliation against U.S. personnel in Iraq after a then-
recent report of a rape committed by a serviceman.  [The video
file which MEHANNA sent depicts, in detail, the mutilation and
abuse of the remains of U.S. personnel in Iraq.  The video
contains a preface which shows the image of Usama bin Laden, with
an Arabic voiceover in which bin Laden thanked the Iraqi
mujahideen for their continued attacks on America and its allies,
and that they made all Muslims proud.]  As MEHANNA described the
video to his associate in detail, he was asked if there was a
judicial process to address the alleged rape.  MEHANNA responded,
"who cares, Texas BBQ is the way to go."

26.  On or about December 12, 2006, Daniel Maldonado, who
was then in Somalia receiving military training from al Qa'ida
and fighting with the Islamic Courts movement, called TAREK
MEHANNA to encourage MEHANNA to come to Somalia and join him.

27.  On or about December 16, 2006, TAREK MEHANNA knowingly
gave false information to two members of the Joint Terrorism Task
Force of the Federal Bureau of Investigation concerning the (then
current) whereabouts of Daniel Maldonado and what he was doing.

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 11 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 10 of 40
APPENDIX 63

At the time, Maldonado was in Somalia receiving military training from al Qa'ida and fighting with the Islamic Courts movement.

All in violation of Title 18, United States Code, Section 2339B.

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 12 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 11 of 40
APPENDIX 64

COUNT TWO
18 U.S.C. §2339A
Conspiracy to Provide Material Support to Terrorists

Beginning in or about 2001, and continuing until on or about the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in the District of Massachusetts and elsewhere, the defendants,

TAREK MEHANNA, and
AHMAD ABOUSAMRA

did knowingly and unlawfully combine, conspire and agree with each other and with others known and unknown to the Grand Jury to provide material support and resources, as that term is defined in 18 U.S.C. §2339A(b), including, property, services, currency and monetary instruments, training, expert advice and assistance, facilities and personnel, and to conceal and disguise the nature, location, source, and ownership of such material support and resources, knowing and intending that the material support and resources were to be used in preparation for and in carrying out violations of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country), and Section 2332 (extraterritorial homicide of a U.S. national).

Overt Acts

In furtherance of the conspiracy, the conspirators committed and caused to be committed, in the District of Massachusetts and elsewhere, the following overt acts, among others:

11

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 13 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 12 of 40
APPENDIX 65

1.    In or about 2002, TAREK MEHANNA, AHMAD ABOUSAMRA and K (whose true name is known to the Grand Jury) discussed going to terrorist training camps in Pakistan in order to receive military-type training.  They conducted logistical research on the internet pertaining to the locations of terrorist training camps and how to travel there, and sought assistance from a person knowledgeable about Pakistan who had a connection to a terrorist organization there.

2.    In or about April 2002, AHMAD ABOUSAMRA traveled to Pakistan with the intent to receive military-type training at a terrorist training camp so that he could join with others to fight and kill United States nationals.

3.    In 2002, K (whose true name is known to the Grand Jury) gave AHMAD ABOUSAMRA, who was leaving to travel to Pakistan, a few hundred dollars to give to a jihadist group in support of the mujahideen, that is, soldiers who fight jihad.

4.    In or about August 2002, AHMAD ABOUSAMRA called a telephone number in Pakistan in order to speak with a man he knew as Abdulmajid, whom ABOUSAMRA had met in Pakistan and who was going to help ABOUSAMRA find a terrorist training camp that would accept him.

5.    In or about early April 2006, ABOUSAMRA called "two phone companies," for the purpose of trying to find the telephone number of Abdulmajid from his "old [telephone toll] records."

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 14 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 13 of 40
APPENDIX 66

6. At various times between 2001 and 2004, AHMAD ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury), in order to inspire one another and others to engage in violent jihad and martyrdom, watched jihadi videos with each other and with others, including Daniel Maldonado.

7. At various times beginning in or about the fall of 2002, through in or about the fall of 2004, TAREK MEHANNA and AHMAD ABOUSAMRA discussed with Daniel Maldonado, a then recent convert to Islam, their view of the religious justification for suicide bombings, the killing of civilians and the "glory of dying on the battlefield for Allah."

8. In or about 2003, AHMAD ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury) discussed attending a terrorist training camp so that they could then enter Iraq, join with others to fight and kill United States nationals. They researched various ways to enter Iraq through neighboring countries.

9. In or about October 2003, AHMAD ABOUSAMRA traveled to Sacramento, California to meet with J (whose true name is known to the Grand Jury) for advice on where to go and whom to see in Yemen to receive terrorist training. Among other things, ABOUSAMRA and J discussed that J had been in Pakistan and Yemen in or about the late 1990s.

10. In or about October 2003, AHMAD ABOUSAMRA gave J (whose

13

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 15 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 14 of 40
APPENDIX 67

true name is known to the Grand Jury) approximately $5,000.

11.   In or about October 2003, AHMAD ABOUSAMRA told J (whose
true name is known to the Grand Jury) that he (ABOUSAMRA) wanted
to go to Yemen to receive military-type training at a terrorist
training camp so that he could then go to Iraq and join with
others to fight and kill United States nationals.

12.   In or about late 2003, or January, 2004, AHMAD
ABOUSAMRA placed a telephone call to J (whose true name is known
to the Grand Jury) concerning the imminent trip that ABOUSAMRA,
TAREK MEHANNA and K (whose true name is known to the Grand Jury)
were to take to Yemen to receive military-type training at a
terrorist training camp.

13.   On or about February 1, 2004, TAREK MEHANNA, AHMAD
ABOUSAMRA and K (whose true name is known to the Grand Jury) left
the United States and flew to the United Arab Emirates
("U.A.E."), for the purpose of continuing on to Yemen to receive
military-type training at a terrorist training camp.

14.   On or about February 3, 2004, in the U.A.E., ABOUSAMRA
and MEHANNA accepted a few thousand dollars from K (whose true
name is known to the Grand Jury), who was going to return to the
United States.   MEHANNA and ABOUSAMRA were leaving for Yemen
where they intended to receive military-type training at a
terrorist training camp.

15.   On or about February 4, 2004, TAREK MEHANNA and AHMAD

14

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 16 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 15 of 40
APPENDIX 68

ABOUSAMRA flew from the U.A.E. to Yemen for the purpose of receiving military-type training at a terrorist training camp.

16. On or about February 13, 2004, AHMAD ABOUSAMRA entered Iraq for the purpose of joining others in fighting and killing United States nationals.

17. On or about February 2, 2006, MEHANNA and S (whose true name is known to the Grand Jury) embraced that their activities established them as the "media wing" of al Qa'ida in "raafidayn" [Iraq]. S, referring to the translation and distribution of (for example) messages from and about al Qa'ida leaders, and other media intended to inspire participation in violent jihad, told MEHANNA: "we need to continue with these efforts with the media it bearing ... its fruits."

18. On or about February 5, 2006, S (whose true name is known to the Grand Jury) asked MEHANNA if he (MEHANNA) would do a "abu anas as shamee video in english." [In 2003, Abu Anas al-Shami joined Abu Musab al Zarqawi, the leader of al Qa'ida in Iraq, as his second in command. He was killed in an air strike by U.S. forces in 2004.] MEHANNA agreed to translate the video.

19. On or about February 7, 2006, MEHANNA sent via the internet to A (whose true name is known to the Grand Jury) a video entitled the "Expedition of Umar Hadid," also referred to as "Ghazwah Umar Hadeed" or "GUH." MEHANNA described Umar Hadid as a terrorist leader in Fallujah, Iraq, who was associated with

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 17 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 16 of 40
APPENDIX 69

Abu Musab al-Zarqawi, the leader of al Qa'ida in Iraq. The GUH video is captioned "released by al Qaidah Network in the land of the Two Rivers [Iraq]" "Media Wing," and contains, among other things, combat footage from Iraq and footage of Musab al-Zarqawi speaking in the beginning of the video and Usama bin Laden at the end of the video, that is over an hour long. On February 7, 2006, MEHANNA told A that he [MEHANNA] had help prepare and translate the video he was sending: "it's the Umar Hadid vid[eo] ... but w/ added clips ... and its transed [translated] into English ... by yours truly."

20. On or about March 7, 2006, in response to a statement by S (whose true name is known to the Grand Jury) concerning the popularity of their video entitled the "Expedition of Umar Hadid," which they also referred to as "GUH," MEHANNA stated: "I just hope it ... leads to action."

21. At various times, MEHANNA and several individuals, including a person N and D (whose true names are known to the Grand Jury), and ABOUSAMRA, discussed efforts to create like-minded youth in the Boston area. For example, in describing his efforts involving one of the individuals (he names), on or about February 1, 2006, MEHANNA wrote "I lent him the state of the ummah cd ... and after he saw it ... he told me ... 'Things are much clearer now.'" In another conversation on or about April 15, 2006, MEHANNA was exasperated at how few there were in the

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 18 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 17 of 40
APPENDIX 70

area who agreed with his interpretation of the faith. MEHANNA then went on to say that he was "working on it" and that he was trying "one-on-one efforts like, befriend a person slip stuff in here and there," to which N wrote, "recruit, brainwash," and MEHANNA agreed.

22. On or about April 1, 2006, MEHANNA completed translation of *39 Ways to Serve and Participate in Jihad*, which was intended to incite people to engage in violent jihad.

23. On or about April 9, 2006, MEHANNA told S (whose true name is known to the Grand Jury) that he hoped his [MEHANNA's] translation of *39 Ways to Serve and Participate in Jihad* "makes an impact;" S told MEHANNA that a "brother ... said it reminded him of" *Mein Kampf* or *The Anarchist's Cookbook*.

24. In or about July 2006, MEHANNA distributed a video to multiple associates, describing it as depicting the aftermath of the retaliation against U.S. personnel in Iraq after a then-recent report of a rape committed by a serviceman. The video file which MEHANNA sent depicts, in detail, the mutilation and abuse of the remains of U.S. personnel in Iraq. The video contains a preface which shows the image of Usama bin Laden, with an Arabic voiceover in which bin Laden thanked the Iraqi mujahideen for their continued attacks on America and its allies, and that they made all Muslims proud. As MEHANNA described the video to his associate in detail, he was asked if there was a

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 19 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 18 of 40
APPENDIX 71

judicial process to address the alleged rape.  MEHANNA responded, "who cares, Texas BBQ is the way to go."

25.   On or about December 12, 2006, Daniel Maldonado, who was then in Somalia receiving military-type training from al Qa'ida and fighting with the Islamic Courts Union, called TAREK MEHANNA to encourage MEHANNA to come to Somalia and join him.

26.   On or about December 12, 2006, when questioned by two members of the Joint Terrorism Task Force of the Federal Bureau of Investigation in Boston in connection with a terrorism investigation, AHMAD ABOUSAMRA provided false information about the purpose and intended destination of his 2004 trip to Yemen, and the purpose of his 2004 trip to Iraq.

27.   On or about December 16, 2006, when questioned by two members of the Joint Terrorism Task Force of the Federal Bureau of Investigation in Boston in connection with a terrorism investigation, TAREK MEHANNA provided false information about the purpose and intended destination of his 2004 trip to Yemen and the (then) current whereabouts and activity of Daniel Maldonado.

28.   On or about April 23, 2007, TAREK MEHANNA gave B (whose true name is known to the Grand Jury) a copy of a jihadi video. The DVD contained videos from Chechnya (including one called "Russian Hell") and Afghanistan.

All in violation of Title 18, United States Code, Section 2339A.

18

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 20 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 19 of 40
APPENDIX 72

## COUNT THREE
### 18 U.S.C. §2339A
#### Providing and Attempting to Provide
#### Material Support to Terrorists

From in or about the spring of 2002, the exact date being

unknown to the Grand Jury, and continuing until in or about

February 2007, in the District of Massachusetts and elsewhere,

the defendants,

### TAREK MEHANNA, and
### AHMAD ABOUSAMRA,

aiding and abetting each other and others known and unknown to

the Grand Jury, did knowingly provide and attempt to provide

material support and resources, as that term is defined in 18

U.S.C. §2339A(b), including property, services, currency and

monetary instruments, training, expert advice and assistance,

facilities and personnel, and did conceal and disguise and

attempt to conceal and disguise the nature, location, source, and

ownership of such material support and resources, knowing and

intending that the material support and resources were to be used

in preparation for and in carrying out violations of Title 18,

United States Code, Section 956 (conspiracy to kill, kidnap,

maim, or injure persons or damage property in a foreign country),

and Section 2332 (extraterritorial homicide of U.S. national).


All in violation of Title 18, United States Code, Sections
2339A and 2.


19

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 21 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 20 of 40
APPENDIX 73

COUNT FOUR
18 U.S.C. §956
Conspiracy to Kill in a Foreign Country

Beginning in or about 2001, and continuing until on or about the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in the District of Massachusetts and elsewhere, the defendants,

TAREK MEHANNA, and
AHMAD ABOUSAMRA

did, within the jurisdiction of the United States, knowingly and unlawfully combine, conspire and agree with each other and with others known and unknown to the Grand Jury to commit acts outside the United States that would constitute the offense of murder if committed in the jurisdiction of the United States, and one or more of the conspirators committed an act within the jurisdiction of the United States to effect an object of the conspiracy. Acts to further an object of the conspiracy that one or more conspirators committed and caused to be committed in the District of Massachusetts, included the following overt acts, among others:

1.   In or about 2002, TAREK MEHANNA, AHMAD ABOUSAMRA and K (whose true name is known to the Grand Jury) discussed going to terrorist training camps in Pakistan in order to receive military-type training. They conducted logistical research on the internet pertaining to the locations of terrorist training camps and how to travel there, and sought assistance from a

20

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 22 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 21 of 40
APPENDIX 74

person knowledgeable about Pakistan who had a connection to a terrorist organization there.

2.    In 2002, AHMAD ABOUSAMRA left the District of Massachusetts and traveled to Pakistan with the intent to receive military-type training at a terrorist training camp so that he could join with others to fight and kill United States nationals.

3.    In 2002, K (whose true name is known to the Grand Jury) gave AHMAD ABOUSAMRA, who was leaving to travel to Pakistan, a few hundred dollars to give to a jihadist group in support of the mujahideen, that is, soldiers who fight jihad.

4.    In 2003, AHMAD ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury) discussed attending a terrorist training camp so that they could then enter Iraq, join with others, and fight and kill United States nationals.  They researched various ways to enter Iraq through neighboring countries.

5.    In or about October 2003, AHMAD ABOUSAMRA traveled to Sacramento, California to meet with J (whose true name is known to the Grand Jury) for advice on where to go and whom to see in Yemen to receive military-type training.  Among other things, ABOUSAMRA and J discussed that J had been in Pakistan and Yemen in or about the late 1990s.

6.    On or about February 1, 2004, TAREK MEHANNA, AHMAD ABOUSAMRA and K (whose true name is known to the Grand Jury) left

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 23 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 22 of 40
APPENDIX 75

the United States and flew to the United Arab Emirates

("U.A.E."), for the purpose of continuing on to Yemen to receive

military-type training at a terrorist training camp.  Their

intention was ultimately to enter Iraq for the purpose of joining

with others in fighting and killing United States nationals.


     All in violation of Title 18, United States Code, Section
956.

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 24 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 23 of 40
APPENDIX 76

<u>COUNT FIVE</u>
18 U.S.C. §371
Conspiracy

Beginning in or about 2003, and continuing until on or about the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in the District Massachusetts and elsewhere, the defendants,

TAREK MEHANNA, and
AHMAD ABOUSAMRA

did knowingly and unlawfully combine, conspire and agree with each other and with others known and unknown to the Grand Jury to knowingly and willfully make materially false, fictitious and fraudulent statements, and provide false information and documents containing false information, and conceal material information, concerning matters within the jurisdiction of the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001.

<u>Overt Acts</u>

In furtherance of the conspiracy, the conspirators committed and caused to be committed, in the District of Massachusetts and elsewhere, the following overt acts, among others:

1.   In or about early 2004, the defendants AHMAD ABOUSAMRA and TAREK MEHANNA researched on the internet information concerning schools in Yemen, including the Dar al Mustafa school, so that they could tell Customs and other U.S. officials that they intended to study Arabic in Yemen in February 2004.

23

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 25 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 24 of 40
APPENDIX 77

2.   On or about February 1, 2004, when AHMAD ABOUSAMRA was questioned by government officials at Logan Airport, in Boston, Massachusetts, concerning the purpose of his trip to Yemen, he provided false information.

3.   On or about August 12, 2004, AHMAD ABOUSAMRA completed a Customs Declaration, Form 6059B, and, in response to a question that asked "Countries visited on this trip prior to U.S. arrival," the defendant responded by writing "Syria."

4.   On or about December 12, 2006, when questioned by two members of the Joint Terrorism Task Force of the Federal Bureau of Investigation in Boston in connection with a terrorism investigation, AHMAD ABOUSAMRA provided false information about the purpose and intended destination of his 2004 trip to Yemen, and the purpose of his 2004 trip to Iraq.

5.   On or about December 13, 2006, ABA (whose true name is known to the Grand Jury) told AHMAD ABOUSAMRA, TAREK MEHANNA and K (whose true name is known to the Grand Jury), "you guys have to come up with the same story which sound right and you have to stand by it."

6.   On or about December 13, 2006, when K (whose true name is known to the Grand Jury) expressed concern that J (who was referred to as "Abu Omar") (whose true name is known to the Grand Jury) might have given information to the Federal Bureau of Investigation about the purpose of their 2004 trip to Yemen, the

24

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 26 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 25 of 40
APPENDIX 78

following exchange took place involving ABOUSAMRA, TAREK MEHANNA and K:

| | |
|---|---|
| K: | Abu Omar. |
| ABOUSAMRA: | He doesn't exist anymore. |
| MEHANNA: | Don't worry about him. |
| | * * * * * * * |
| ABOUSAMRA: | We're not even going to mention that. |

7.   On or about December 16, 2006, when questioned by two members of the Joint Terrorism Task Force of the Federal Bureau of Investigation in Boston in connection with a terrorism investigation, TAREK MEHANNA provided false information about the purpose and intended destination of his 2004 trip to Yemen and the (then) current whereabouts and activity of Daniel Maldonado.

8.   On or about February 25, 2007, TAREK MEHANNA told K (whose true identity is known to the Grand Jury) that they needed to get their stories straight so that they would have a "good answer" when they were again questioned by the FBI.


All in violation of Title 18, United States Code, Section 371.

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 27 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 26 of 40
APPENDIX 79

COUNT SIX
18 U.S.C. §1001(a)(2)
False Statements

On or about December 16, 2006, in the District

Massachusetts, the defendant,

TAREK MEHANNA,

in a matter within the jurisdiction of the executive branch of

the Government of the United States, did knowingly and willfully

make materially false, fictitious and fraudulent statements when

he provided information, that he knew was untrue, in connection

with an investigation involving international and domestic

terrorism, as defined in Title 18, United States Code Sections

2331(1) and 2331(5), to a Special Agent of the Federal Bureau of

Investigation ("FBI") and a Special Federal Officer, who were

both members of the Joint Terrorism Task Force of the FBI

("JTTF").  The false, fictitious and fraudulent information was

in response to questions about the (then) current whereabouts and

activities of one Daniel Maldonado.  The false and fictitious

information included the following:

> The defendant TAREK MEHANNA stated that he last heard
> from Daniel Maldonado via telephone approximately two
> weeks prior to the December 16, 2006 interview.

> The defendant TAREK MEHANNA stated that Daniel
> Maldonado was then living in a suburb of Alexandria,
> Egypt.

> The defendant TAREK MEHANNA stated that Daniel
> Maldonado was then employed maintaining a website.

As the defendant TAREK MEHANNA then and there well knew, these

26

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 28 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 27 of 40
APPENDIX 80

statements were false, fictitious and fraudulent in that just a few days before the interview, the defendant TAREK MEHANNA had received a telephone call from Daniel Maldonado from Somalia. When the defendant TAREK MEHANNA spoke to the members of the JTTF, he knew Daniel Maldonado had left Egypt and moved to Somalia, and knew and had been told by Daniel Maldonado that he (Daniel Maldonado) was in Somalia, was receiving military-type training, and was involved in fighting and violent jihad.

All in violation of Title 18, United States Code, Section 1001(a)(2).

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 29 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 28 of 40
APPENDIX 81

COUNT SEVEN
18 U.S.C. §1001(a)(2)
False Statements

On or about December 16, 2006, in the District
Massachusetts, the defendant,

TAREK MEHANNA,

in a matter within the jurisdiction of the executive branch of
the Government of the United States, did knowingly and willfully
make materially false, fictitious and fraudulent statements when
he provided information, that he knew was untrue, in connection
with an investigation involving international and domestic
terrorism, as defined in Title 18, United States Code, Sections
2331(1) and 2331(5), to a Special Agent of the Federal Bureau of
Investigation ("FBI") and a Special Federal Officer, who were
both members of the Joint Terrorism Task Force of the FBI
("JTTF").  The false, fictitious and fraudulent information was
in response to questions about the purpose and intended
destination of a trip he had taken in February 2004 to Yemen, as
well as whether he had received any assistance from anyone in
advance of the trip with plans and contacts in Yemen.  The false
and fictitious information included the following:

The defendant TAREK MEHANNA stated that, in 2004, he,
along with two individuals, AHMAD ABOUSAMRA and K
(whose true name is known to the Grand Jury), traveled
to the Middle East, with the intention of attending
religious and Arabic language schools in Yemen.

The defendant TAREK MEHANNA stated that all the
preparations for their trip and all the research had

28

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 30 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 29 of 40
APPENDIX 82

> been done online, that no one had assisted them with
> their plans or with contacts in Yemen, and that he did
> not know anyone who resided in California.
>
> The defendant TAREK MEHANNA stated that, in Yemen, he
> and AHMAD ABOUSAMRA traveled to the Hadramawt province
> and the Dar Al Mustafa school.

As the defendant TAREK MEHANNA then and there well knew, these

statements were false, fictitious and fraudulent in that he left

the United States on or about February 1, 2004 for the purpose of

traveling to Yemen to find and receive military-type training at

a terrorist training camp and to thereafter participate in

violent jihad and terrorism against the United States, its armed

forces, citizens and interests.  The defendant TAREK MEHANNA

never intended to attend and study at the Dar al Mustafa school,

nor did he intend to attend any other school for Arabic and

Islamic training.  In advance of their trip, AHMAD ABOUSAMRA, on

behalf of the defendant TAREK MEHANNA, AHMAD ABOUSAMRA and K

(whose true name is known to the Grand Jury), had received

assistance with their plans, including places to go and

individuals to contact in Yemen, from an individual named J

(whose true name is known to the Grand Jury), who had himself

previously attended a terrorist training camp, and who then

resided in California.


All in violation of Title 18, United States Code, Section
1001(a)(2) .

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 31 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 30 of 40
APPENDIX 83

COUNT EIGHT
18 U.S.C. §1001(a)(2)
False Statements

On or about December 12, 2006, in the District

Massachusetts, the defendant,

AHMAD ABOUSAMRA,

in a matter within the jurisdiction of the executive branch of

the Government of the United States, did knowingly and willfully

make materially false, fictitious and fraudulent statements when

he provided information, that he knew was untrue, in connection

with an investigation involving international and domestic

terrorism, as defined in Title 18, United States Code, Sections

2331(1) and 2331(5), to a Special Agent of the Federal Bureau of

Investigation ("FBI") and a Special Federal Officer, who were

both members of the Joint Terrorism Task Force of the FBI

("JTTF"). The false, fictitious and fraudulent information was

in response to questions about the purpose and intended

destination of a trip he took in February 2004 to Yemen and Iraq,

as well as whether he received any assistance from anyone in

advance of the trip with plans and contacts in Yemen. The false

and fictitious information included the following:

> The defendant AHMAD ABOUSAMRA stated that, in 2004, he
> had traveled to the Middle East, with the intention of
> attending an Arabic language school in Yemen.
>
> The defendant AHMAD ABOUSAMRA stated that he had
> intended to attend the al-Mustafa school near Mukalla,
> Yemen.

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 32 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 31 of 40
APPENDIX 84

> The defendant AHMAD ABOUSAMRA stated that he did not
> have any prearranged contacts in Yemen and no one had
> assisted him with making arrangements for the trip.
>
> The defendant AHMAD ABOUSAMRA stated that, after
> visiting Yemen, he had gone to Jordan and Iraq.  He
> stated that his purpose for going to Iraq was to work
> as an Arabic/English translator.

As the defendant AHMAD ABOUSAMRA then and there well knew, these

statements were false, fictitious and fraudulent in that he left

the United States on or about February 1, 2004 for the purpose of

traveling to Yemen to find and receive military-type training at

a terrorist training camp and to thereafter participate in

violent jihad and terrorism against the United States, its armed

forces, citizens and interests.  The defendant AHMAD ABOUSAMRA

never intended to attend and study at the Dar al Mustafa school,

nor did he intend to attend any other school for Arabic language

training.  In advance of their trip, AHMAD ABOUSAMRA, on behalf

of himself, TAREK MEHANNA, and K (whose true name is known to the

Grand Jury), received assistance with their plans, including

places to go and individuals to contact in Yemen, from an

individual named J (whose true name is known to the Grand Jury),

who had himself previously attended a terrorist training camp.

Further, the defendant AHMAD ABOUSAMRA did not enter Iraq to work

as a translator, but entered Iraq on or about February 13, 2004

for the purpose of participating in violent jihad and fighting

and killing United States nationals.

   All in violation of Title 18, United States Code, Section
1001(a)(2).

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 33 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 32 of 40
APPENDIX 85

<u>COUNT NINE</u>
18 U.S.C. §1001(a)(2)
False Statements

On or about August 12, 2004, in the District of
Massachusetts, the defendant,

AHMAD ABOUSAMRA,

in a matter within the jurisdiction of the executive branch of
the Government of the United States, did knowingly and willfully
make materially false, fictitious and fraudulent statements, when
he provided false information to Officers of Customs and Border
Protection, and a Special Agent of Immigration and Customs
Enforcement, both agencies being part of the Department of
Homeland Security.  The false and fictitious information included
the following:

> The defendant AHMAD ABOUSAMRA stated that he had
> traveled to Yemen in order to visit the Dar al Mustafa
> language school, because he was interested in studying
> Arabic language.

> The defendant AHMAD ABOUSAMRA stated that, after
> leaving Yemen, he had traveled to Jordan for two weeks,
> where he stayed with a family friend, and then to Syria
> to visit his grandparents.  He stated that he spent the
> remainder of his trip in Syria.

As the defendant AHMAD ABOUSAMRA then and there well knew, these
statements were false, fictitious and fraudulent in that he left
the United States on or about February 1, 2004 for the purpose of
traveling to Yemen to find and receive military-type training at
a terrorist training camp and to thereafter participate in
violent jihad and terrorism against the United States, its armed

32

Case 1:12-cr-00033-JLK Document 1175-1 Filed 11/28/16 USDC Colorado Page 34 of 41
Case 1:09-cr-10017-GAO Document 83 Filed 06/17/10 Page 33 of 40
APPENDIX 86

forces, citizens and interests. The defendant AHMAD ABOUSAMRA never intended to attend and study at the Dar al Mustafa school, nor did he intend to attend any other school for Arabic language training. Further, after traveling to Jordan, the defendant AHMAD ABOUSAMRA entered Iraq, where he stayed for approximately two weeks.

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNT TEN
18 U.S.C. §1001(a)(3)
False Statements

On or about August 12, 2004, in the District of Massachusetts, the defendant,

AHMAD ABOUSAMRA,

in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully make and use a false writing knowing the same to contain materially false, fictitious and fraudulent statements, that is, on United States Customs Form 6059B, Customs Declaration, in response to a question that asked "Countries visited on this trip prior to U.S. arrival," the defendant responded by writing "Syria." As the defendant then and there knew, this response was false in that after leaving the United States on or about February 1, 2004, he had traveled to the United Arab Emirates, Yemen, Jordan and Iraq, as well as Syria, prior to his arrival in the United States on August 12, 2004.

In violation of Title 18, United States Code, Section 1001(a)(3).

Case 1:12-cr-00033-JLK  Document 1175-1  Filed 11/28/16  USDC Colorado  Page 36 of 41
Case 1:09-cr-10017-GAO  Document 83  Filed 06/17/10  Page 35 of 40
APPENDIX 88

COUNT ELEVEN
18 U.S.C. §1001(a)(2)
False Statements

On or about September 2, 2006, in the District of

Massachusetts, the defendant,

AHMAD ABOUSAMRA,

in a matter within the jurisdiction of the executive branch of

the Government of the United States, did knowingly and willfully

make materially false, fictitious and fraudulent statements when

he provided false information to an Officer of Customs and Border

Protection, and a Special Agent of Immigration and Customs

Enforcement, both agencies being part of the Department of

Homeland Security.  The false and fictitious information, that

concerned his travel to Yemen and Iraq in 2004, included the

following:

> The defendant AHMAD ABOUSAMRA stated that he had
> traveled to Yemen for about one week to look at Arabic
> language schools, but didn't like it because it was too
> poor and he had become ill.
>
> The defendant AHMAD ABOUSAMRA stated that he had gone
> to Baghdad, Iraq for two weeks to seek employment as an
> Arabic/English translator.

As the defendant AHMAD ABOUSAMRA then and there well knew, these

statements were false, fictitious and fraudulent in that he left

the United States on or about February 1, 2004 for the purpose of

traveling to Yemen to find and receive military-type training at

a terrorist training camp and to thereafter participate in

violent jihad and terrorism against the United States, its armed

35

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 37 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 36 of 40
APPENDIX 89

forces, citizens and interests.  The defendant AHMAD ABOUSAMRA never intended to attend and study at any Arabic language schools.  Further, after traveling to Jordan, the defendant AHMAD ABOUSAMRA entered Iraq, where he stayed for approximately two weeks.  He went to Iraq with the purpose of engaging in violent jihad against United States soldiers, citizens and interests.

      All in violation of Title 18, United States Code, Section 1001(a)(2).

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 38 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 37 of 40
APPENDIX 90

## FORFEITURE ALLEGATIONS
### (18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(G) & 28 U.S.C. § 2461(c))

1.    Upon conviction of any offense in violation of 18 U.S.C. §§ 2339A, 2339B or 956 alleged herein, the defendants,

TAREK MEHANNA, and
AHMAD ABOUSAMRA

jointly and severally, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(G) and 28 U.S.C. § 2461(c), all assets, foreign or domestic:

(i)   of any individual, entity, or organization engaged in planning or perpetrating such offense against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

(ii)  acquired or maintained by any person with the intent and for the purpose of supporting, planning, conducting, or concealing such offense against the United States, citizens or residents of the United States, or their property; or

(iii) derived from, involved in, or used or intended to be used to commit such offense against the United States, citizens or residents of the United States, or their property.

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 39 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 38 of 40
APPENDIX 91

Such property specifically includes, but is not limited to, one Dell Inspiron 2650 laptop computer bearing serial number HZ2GL11.

    2.   Upon conviction of any offense in violation of 18 U.S.C. §§ 2339A, 2339B or 956 alleged herein, the defendants,

TAREK MEHANNA, and
AHMAD ABOUSAMRA

jointly and severally, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense.

    3.   If any of the property described in paragraphs 1 or 2 hereof as being forfeitable, as a result of any act or omission of the defendants --

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred to, sold to, or deposited with a third party;

        c.  has been placed beyond the jurisdiction of this Court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of

38

Case 1:12-cr-00033-JLK   Document 1175-1   Filed 11/28/16   USDC Colorado   Page 40 of 41
Case 1:09-cr-10017-GAO   Document 83   Filed 06/17/10   Page 39 of 40
APPENDIX 92

all other property of the defendants up to the value of such

property.

     All pursuant to Title 18, United States Code, Section 981
and Title 28, United States Code, Section 2461(c).

APPENDIX 93

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
JEFFREY AUERHAHN
ASSISTANT UNITED STATES ATTORNEY

_____
ALOKE S. CHAKRAVARTY
ASSISTANT UNITED STATES ATTORNEYS

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK   6/17/2010

DISTRICT OF MASSACHUSETTS
DATE AND TIME: 6/17/2010
@ 12:29pm

40