**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 12-cr-00033-JLK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    BAKHTIYOR JUMAEV,

    Defendant.

---

**ORDER DENYING DEFENDANT JUMAEV'S MOTION TO SET ASIDE VERDICT
AND TO DISMISS THE INDICTMENT WITH PREJUDICE, OR IN THE
ALTERNATIVE, FOR A NEW TRIAL (ECF NO. 1827)**

---

Kane, J.

On June 22, 2018, I issued a Preliminary Order (ECF No. 1902)[1] on Defendant Bakhtiyor Jumaev's Motion to set aside the verdict and to dismiss the indictment or, in the alternative, for a new trial (ECF No. 1827). With that Order, I found that extraneous material—approximately 52 minutes of an Islamic Jihad Union propaganda video and its corresponding translation—was submitted to the jury as Exhibits 313 and 313A. I also announced that I would be holding a hearing to interview the presiding juror from Mr. Jumaev's trial on whether the jury had actually reviewed the extraneous material. On June 26, 2018, I conducted the hearing and, at its conclusion, informed the parties that I would issue this written Order to memorialize my findings and final ruling.

*The Hearing*

Before the hearing, I provided counsel for both parties with a list of questions I intended to ask the presiding juror. Counsel suggested edits, and I incorporated them in my questioning.

---

[1] The Preliminary Order was initially issued at a Level 2 Restriction but has since been replaced with the Unrestricted Preliminary Order at ECF No. 1906-1.

Upon commencing the hearing, I advised the presiding juror that none of my questions were intended to elicit information on "the deliberations of the jury, [their] thought processes or how [they] came about [their] decision." 06/26/18 Tr. at 5:16-17, ECF No. 1909. I then reminded the presiding juror that the oath she took still applied and stressed the importance of her providing accurate responses.

I proceeded by asking whether there was a particular juror who was in charge of playing the videos in evidence on the computer provided to the jury. The presiding juror's immediate response was: "We ended up not really doing that." *Id.* at 7:7. I asked her to clarify, and she stated: "We might have looked at one, but then we just sort of went back—it was sort of tedious to get through the one we were looking at, so we went back to the transcripts and just used that." *Id.* at 7:9-12. The presiding juror repeatedly stated with certainty that the jurors attempted to play only a single video during deliberations and that it was not one of the Islamic Jihad Union propaganda videos. *Id.* at 8:4-21, 9:3-5 ("[L]ike I said, we tried to play that one, and that was it. Didn't look at anything else."). She did recall the video played during the trial that depicted individuals shooting weapons while an imam spoke in the background. *Id.* at 9:20-21. But, when I asked her about some of the memorable content in the extraneous material, i.e., a scene of a goat being tied up and slaughtered and images of dead babies, she was unaware of a video containing such scenes and images. *Id.* at 8:22-24, 9:15-10:2, 10:7-8. In addition to the video, I specifically inquired about the extraneous translation. The presiding juror responded that the jurors did not look at any translations during their deliberations that they had not seen before. *Id.* at 9:1-10.

The presiding juror also confirmed that the jurors looked at all of the evidence together, explaining that the only purpose for which jurors might have viewed the evidence separately was to find a particular item to then show to the group. *Id.* at 6:10-25.

2

*Analysis*

Based on the presiding juror's unequivocal responses, I find that no juror reviewed the extraneous material in Exhibits 313 and 313A. Thus, I need not presume Mr. Jumaev was prejudiced by the material. *See United States v. Byrne*, 171 F.3d 1231, 1236 (10th Cir. 1999) (holding that there was not even the slightest possibility that extraneous material affected the verdict when each juror swore under oath that he or she had not read it); *c.f. United States v. Wood*, 958 F.2d 963, 965 (10th Cir. 1992) (affirming the district court's grant of a new trial based on the *inconclusive testimony* of the presiding juror as to whether the jury was exposed to government counsel's notes on a writing pad found in the jury room). Nor must I engage in the process of "reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware." *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988). As I identified in my Preliminary Order, the paramount question to be answered in deciding Mr. Jumaev's Motion is whether he was denied a fair trial. The concerns identified there—Mr. Jumaev's loss of the rights of confrontation, cross-examination, and the assistance of counsel—are not present here, as the jurors did not actually review the extraneous material.

Accordingly, I conclude that Mr. Jumaev was not denied a fair trial and it is not in the interest of justice to set aside the verdict. His Motion (ECF No. 1827) is DENIED.

DATED this 28th day of June, 2018.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE