EXHIBIT 1

TRULINCS 68105066 - JUMAEV, BAKHTIYOR - Unit: ENG-J-B

---

FROM: 68105066
TO:
SUBJECT:
DATE: 07/09/2018 07:02:49 PM

Case No. 12-cr-00033-JLK-2
United States v. Bakhtiyor Jumaev

Judge Kane,

Your Honor, I am writing to you prior to sentencing to share with you some thoughts regarding my case. As you are aware, my ability to speak English is limited. An English speaker assisted me in composing this letter. I assure you that his assistance was only grammatical - all observations and opinions in this letter are mine.

I've been told that some defendants write their judge prior to sentencing to explain how they have learned from their mistakes, to declare how sorry they are, to explain the hardships they will be facing based on the severity of the sentence, and to beg for mercy. During the time this case has been in your Court, you have come to know my situation well enough to know the hardships I have endured such as my years of incarceration and being separated from my family. You are also aware of the hardships ahead of me such as my continued separation from my family and my unresolved immigration case. I shall therefore not dwell on those topics. As an honest man, I cannot in good conscience profess my guilt or apologize for my actions. Contrary to what the jury concluded, I am an innocent man. I know that declaring my innocence at this stage could be held against me at sentencing, but I must be honest even if doing so could prove detrimental. I could not live with myself if I were to do otherwise. It is wrong for a man to refuse to take responsibility for his actions, but it would be equally wrong for me to falsely claim responsibility for actions for which I am not truly guilty.

Before proceeding, I want to be very clear that I have nothing but the utmost respect for you, your Honor. During my case, you have on multiple occasions stated that cases such as this are extremely complex and require great care to ensure a fair and impartial trial. I greatly appreciate that you both recognized this fact and made a point to emphasize it. If you take offense with anything I say within this letter, please understand that it was not my intent to offend or disrespect you. In complex matters such as this case, differences of opinion are natural and should not be construed as criticism.

Your Honor, I strongly believe that I was denied my right to a speedy trial. As you know, six years elapsed between my arrest and my trial. These delays were not justified. At a minimum, they constituted official negligence. In my opinion, it was more than that - it was bad-faith delay on the part of the prosecution. I believe in giving others the benefit of the doubt, but the prosecution's reasons for delay can only be described as disingenuous. The prosecution blamed delays on the declassification process even though much of the material involved conversations in which I was a participant. They implied that they had important evidence that was classified, but once declassified that evidence would be so significant that it would justify these delays. The trial has since come and gone yet this "important" evidence that justified the delays never materialized.

As you are well aware, it took years to get discovery from the prosecution. Even once the Court set a clear deadline, the prosecution still delayed. Not only did they continue to dump substantial and important discovery on us well after the deadline, in many cases there was no conceivable reason for the delay. For example, these late discoveries included emails the Government had possessed for five to six years. When the Government files an exhibit list and 54% of the exhibits on the list were not provided to my lawyers until after the discovery cutoff, it is difficult to conclude that the Government was acting in good faith.

The prosecution's primary purpose in prosecuting me seems to have been to have someone to testify against my codefendant. When I refused to cooperate with them, the prosecutor asked to have a private meeting with me in 2014 and again in 2015. I refused both times. In early 2016, the prosecution came to me with a deal - I plead guilty and get time served and get to remain in the United States. Your Honor, for the prosecution to both argue that I am a dangerous supporter of terrorism yet welcome me to stay in the United States so long as I don't go to trial seems disingenuous, to say the least.

In May 2016, as punishment for refusing to testify against my codefendant, the Government added two new charges to my case. The Government knew that these were bogus charges and ultimately dropped them. But by bringing these charges, the prosecution was successful in shamelessly harming the reputation of one of my sons and wasting many hours of my lawyer's time having to prepare for charges that were completely different factually from the other charges. Given that the Government took over four years to bring these new charges and did so only at a time when they wished to both punish me and to further delay the case, I'm again forced to conclude that the prosecution was not acting in good-faith.

---

As you'll recall, in February 2017 my lawyers filed a motion to dismiss the case due to my having been denied my right to a speedy trial. The motion argued that all three interests that the speedy trial right was designed to protect had been violated:

1. To prevent oppressive pretrial incarceration
2. To minimize anxiety and concern of the accused
3. To limit the possibility that the defense will be impaired

The last one is the most important. Not only does the delay effect the memory and availability of witnesses, but it has a substantial impact on the presumption of innocence. Most people, upon hearing that someone has been awaiting trial for six years, assume that this person must be guilty - the justice system would never let an innocent person wait that long.

In my opinion, the motion to dismiss due to my denial of a speedy trial was not given sufficient consideration. Upon its dismissal, I was left with two options: go to trial immediately with only partial review of the discovery or accept a nine month delay, thus exacerbating further my lack of a speedy trial. I recognize that this was a difficult situation, your Honor, but I do have to state that a defendant should never be put in the position of having to decide which is more important, a fair trial or a speedy trial.

As you have previously observed, terrorism cases by definition must be considered among the most sensitive. You also noted that the efforts to achieve a fair trial put the system to a greater test than it is generally equipped to handle. I'm concerned that the effort was insufficient to ensure a fair trial with regards to the jury. This case is about terrorism; it is about Islam; it involves topics that inflame people and incite bigotry; and it is international. Yet the jury was composed of all whites. There were no Muslims. And a majority of the jurors had family members or close associates in the military.

Part way through the trial, a juror was dismissed after telling a cashier at Target that he had already concluded that I was a terrorist. Although he was dismissed, I'm left to wonder if after reaching this premature conclusion, did he say anything to any other jurors that may have influenced them, making them no longer impartial?

With regards to the propaganda video that was erroneously provided to the jury for its deliberations, you had stated that "... I must presume prejudice and grant a new trial unless the Government can show the exposure of the jury to the extraneous material was harmless beyond a reasonable doubt." In my opinion, that standard was not met. Although the juror testimony indicated that the video was not viewed, I'm left to wonder rather one or more jurors could have been influenced by simply being aware that the full video and transcript had been made available to them (an act that would convey to the jury that these materials are worth consideration)? Given the extremely inflammatory nature of the video, it is hard for me to dismiss the possibility that one or more jurors were influenced by it, even if only subconsciously. This is especially true given the number of jurors that had family members or close associates in the military and that propaganda videos such as this are known to show and glorify the killing of American soldiers.

Finally, I am concerned about the potential that the jury pool may have been tainted beforehand. I found out just last week, after the dismissal of the motion regarding the jury being given the propaganda video, that the Denver Post ran an article about the motion to suppress that video on January 24, 2018, prior to the trial ("Don't Show Jury Beheading Video, Defendant in Denver Terrorism Case Pleads", denverpost.com). If a future juror had seen that article than they would have already have known beforehand of the existence of this video and its association with my trial. In that case, the damage was already done before the trial even began.

I thank you sir for allowing me to share with you my thoughts and concerns regarding my trial. Again, if anything I said offended you than I sincerely apologize.

______________________________
Bakhtiyor Jumaev




**From:** Michael Connor <mconnor@nacdl.org>
**To:** savmaster <savmaster@aol.com>
**Subject:** NACDL Trial Penalty Report Released
**Date:** Wed, Jul 11, 2018 8:04 am

Trial Penalty Report Released




# News Release ~ 07/11/2018

# Nation's Criminal Defense Bar Releases Groundbreaking Report, Principles, and Recommendations Concerning the 'Trial Penalty' and the Decline of the Constitution's Sixth Amendment Right to Trial

Washington, DC (July 10, 2018) - At a special event at the National Press Club yesterday, The National Association of Criminal Defense Lawyers (NACDL) released The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It. The 'trial penalty' refers to the substantial difference between the sentence offered prior to trial versus the sentence a defendant receives after trial. This penalty is now so severe and pervasive that it has virtually eliminated the constitutional right to a trial. To avoid the penalty, accused persons must surrender many other fundamental rights which are essential to a fair justice system. The release of this report garnered support from leading criminal justice reform entities, all of which agree that the incursion on the right to a trial poses a clear threat to justice.

This report is the product of more than two years of careful research and deliberation. In it, NACDL examines sentencing and other data underlying the fact that, after a 50 year decline, fewer than 3% of federal criminal cases result in a trial. With more than 97% of criminal cases being resolved by plea in a constitutional system predicated upon the Sixth Amendment right to a trial, the fact of imbalance and injustice in the system is self-evident. The report identifies and exposes the underlying causes of the decline of the federal criminal trial and puts forth meaningful, achievable principles and recommendations to address this crisis. With its release, NACDL intends to launch a sustained effort to rein in the abuse of the trial penalty throughout the federal and state

criminal justice systems. The Trial Penalty report, and the principles and recommendations it puts forward, seeks to save the right to a trial from extinction.

"It's true that the trial penalty impacts everyone in our profession, everyone in the justice system, and everyone who finds themselves in the role of defendant," said NACDL President Rick Jones. "But it inordinately impacts the poor and people of color. We have to be mindful of that every step of the way."

"With the release of the report today, NACDL hopes to begin a reform movement that will save the basic right to a trial," said NACDL Executive Director Norman L. Reimer. "The founders of this country recognized that the right to a trial – the interposition of one's peers as a check on government abuse of the power of the prosecutor – was essential to the preservation of liberty. The ability to test evidence, both its legality and its factual sufficiency, is essential to prevent tyranny."

The keynote speaker at yesterday's event was former U.S. Federal Judge John Gleeson (E.D.N.Y.). In addition to NACDL leadership including NACDL President Rick Jones, NACDL Immediate Past President Barry Pollack, and NACDL Executive Director Norman L. Reimer, representatives from numerous leading groups in the criminal justice reform movement from across the political spectrum agree that the trial penalty in the American criminal justice system is a serious problem that needs to be addressed. Those groups included the Cato Institute, Human Rights Watch, Right on Crime, Texas Public Policy Foundation, Families Against Mandatory Minimums, the ACLU, the Charles Koch Institute, the Innocence Project, and Fair Trials International. Pro Bono Counsel Don Salzman from the firm of Skadden, Arps, Slate, Meagher & Flom LLP also spoke, as did New York criminal defense attorney Frederick P. Hafetz. A link to a video recording of the event will be available in the coming days at www.nacdl.org/trialpenaltyreport.

Judge Gleeson, who also authored the foreword to the report, closed his keynote remarks by saying: "Congratulations to NACDL for this fabulous report and to all these organizations who are here to support it. It's a fundamentally important issue. The fact that this conversation is elevated by this report and by your presence here is so important, no matter how long it takes, for the reforms that are needed to come to pass."

As the release of this report is a beginning point for tackling the dramatic encroachment upon the Constitution's Sixth Amendment right to trial, NACDL is seeking to learn about more individual encounters with the trial penalty in the American criminal justice system, whether on the federal or state level. If you are interested in sharing a trial penalty story, please use this link to take a short survey:
https://www.surveymonkey.com/r/TrialPenalty.

Information and a PDF of The Trial Penalty report are available at www.nacdl.org/trialpenaltyreport. A video and audio of the event will also be posted to this page in the coming days.

NACDL thanks the Foundation for Criminal Justice and various other donors whose financial support helped make this project possible. NACDL also extends its deep appreciation to the team of attorneys at the firm of Skadden, Arps, Slate, Meagher & Flom LLP who worked diligently on the extensive research and drafting involved in this critical project. NACDL also extends its thanks to the members of the NACDL Trial Penalty Recommendation Task Force who dedicated their time and effort to this report and the development of its principles and recommendations. This project also would not have been possible without the NACDL members and their clients who contributed their stories to this effort.

## Contact

Ivan Dominguez, NACDL Director of Public Affairs and Communications, (202) 465-7662 or idominguez@nacdl.org.

## National Association of Criminal Defense Lawyers

*The National Association of Criminal Defense Lawyers is the preeminent organization advancing the mission of the criminal defense bar to ensure justice and due process for persons accused of crime or wrongdoing. A professional bar association founded in 1958, NACDL's many thousands of direct members in 28 countries - and 90 state, provincial and local affiliate organizations totaling up to 40,000 attorneys - include private criminal defense lawyers, public defenders, military defense counsel, law professors and judges committed to preserving fairness and promoting a rational and humane criminal justice system.*



National Association of Criminal Defense Lawyers
1660 L Street NW FL 12 Washington DC 20036
202-872-4001

Manage Subscription Options



# The Trial Penalty: The Sixth Amendment Right To Trial on the Verge of Extinction and How To Save It



The 'trial penalty' refers to the substantial difference between the sentence offered in a plea offer prior to trial versus the sentence a defendant receives after trial. This penalty is now so severe and pervasive that it has virtually eliminated the constitutional right to a trial. To avoid the penalty, accused persons must surrender many other fundamental rights which are essential to a fair justice system

This report is the product of more than two years of careful research and deliberation. In it, NACDL examines sentencing and other data underlying the fact that, after a 50 year decline, fewer than 3% of federal criminal cases result in a trial. With more than 97% of criminal cases being resolved by plea in a constitutional system predicated upon the Sixth Amendment right to a trial, the fact of imbalance and injustice in the system is self-evident. The report identifies and exposes the underlying causes of the decline of the federal criminal trial and puts forth meaningful, achievable principles and recommendations to address this crisis. With its release, NACDL intends to launch a sustained effort to rein in the abuse of the trial penalty throughout federal and state criminal justice systems. The *Trial Penalty* report, and the principles and recommendations it puts forward, seeks to save the right to a trial from extinction.




As the release of this report is a beginning point for tackling the dramatic encroachment upon the Constitution's Sixth Amendment right to trial, NACDL is seeking to learn about more individual encounters with the trial penalty in the American criminal justice system, whether on the federal or state level. If you are interested in sharing a trial penalty story, please click this link to take a short survey: https://www.surveymonkey.com/r/TrialPenalty

## News of Interest

- Nation's Criminal Defense Bar Releases Groundbreaking Report, Principles, and Recommendations Concerning the 'Trial Penalty' and the Decline of the Constitution's Sixth Amendment Right to Trial, NACDL News Release, July 10, 2018

Advertisement Advertise with Us






EXHIBIT 3

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

United States of America
v.
AARON T. DANIELS

*Defendant*

Case No. 2:16-mj-531

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* AARON T. DANIELS, who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☒ Complaint ☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. 2339B - Knowingly providing and attempting to provide material support to a designated foreign terrorist organization.

Date: 11/07/2016

*Issuing officer's signature*

City and state: Columbus, OH

Magistrate Judge Terence P. Kemp
*Printed name and title*

**Return**

This warrant was received on *(date)* ______, and the person was arrested on *(date)* ______ at *(city and state)* ______.

Date: ______

*Arresting officer's signature*

*Printed name and title*

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

United States of America
v.
AARON T. DANIELS

*Defendant(s)*

Case No. 2:16-mj-534

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 11/07/2016 in the county of Franklin in the Southern District of Ohio, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 2339B | Knowingly providing and attempting to provide material support to a designated foreign terrorist organization |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Deputy United States Marshal Jonathan Bailey
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/07/2016

*Judge's signature*

City and state: Columbus, OH

Magistrate Judge Terence P. Kemp
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Jonathan Bailey, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant is a Deputy United States Marshal ("DUSM") with the United States Marshals Service, Southern District of Ohio in the Columbus, Ohio office. Your Affiant has been a DUSM for six years, and has been assigned as a Task Force Officer ("TFO") for the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force ("JTTF") for one year. I have been involved in the preparation and execution of numerous federal search warrants for various types of violations. During my current assignment to the JTTF, I have been a Case Agent and Co-Case Agent for multiple international terrorism investigations. While assigned to the JTTF, your Affiant has received specialized training in international terrorism. Furthermore, I have received training in computer-related crime as well as the criminal use of email, social media, and telephonic communications.

2. The statements contained herein are based on an investigation conducted by your Affiant, my experience and training as a TFO on the JTTF, and on other relevant information provided to me by other TFOs and FBI Special Agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of your Affiant's knowledge about this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. All dates are on or about the specified date.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that AARON DANIELS a/k/a Harun Muhammad a/k/a Abu Yusuf (hereinafter referred to as "DANIELS") violated Title 18 U.S.C. § 2339B by knowingly providing and attempting to provide material support to a Designated Foreign Terrorist Organization ("FTO"), the Islamic State of Iraq and the Levant ("ISIL").

**STATUTES VIOLATED**

4. Title 18, United States Code, Section 2339B states: "Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned. . . . To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989)."

**PROBABLE CAUSE – 18 U.S.C. § 2339B**

***Designation of ISIL as a Foreign Terrorist Organization***

5. On or about October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

6. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq (AQI) as a FTO to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary

name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham (ISIS), the Islamic State of Iraq and Syria (ISI), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary of State added the following aliases to the ISIL listing: Islamic State, ISIL, and ISIS. To date, ISIL remains a designated FTO.

***Target of the Investigation and His Aliases***

7. The target of the investigation is Aaron DANIELS, who resides at an address known to your Affiant in Columbus, Ohio, within the Southern District of Ohio. DANIELS' cellular telephone is 614-816-XXXX. While this number is subscribed to by DANIELS' mother, I know it is used by DANIELS because: (1) DANIELS admitted to me that 614-816-XXXX was his number when I interviewed him on February 23, 2016; and (2) DANIELS submitted a U.S. passport application in August of 2015, in which he provided his address and stated that 614-816-XXXX was his cellular telephone number. Furthermore, the passport application contained a photograph of DANIELS.

8. The investigation has determined that DANIELS uses the name Harun Muhammad and that DANIELS created an email account, harunmuhammad443@XXXXX.com, using that name as an alias. On or about July 11, 2016, FBI Agents called 614-816-XXXX (known to be DANIELS' cell phone) and the voicemail message stated that "this is Harun." Also, the email harunmuhammad443@XXXXX.com has been routinely accessed from the Internet Protocol (IP) address of a modem located at DANIELS' residence. Furthermore, this same email account was used to set up a Western Union account in the name of Harun Muhammad, and business records from Western Union show the owner of the account provided

both DANIELS' cellular telephone number and DANIELS' home address in Columbus, Ohio when the account was established. Consequently, your Affiant believes that DANIELS is the user of the email account and uses the alias Harun Muhammad.

9. The evidence demonstrates that DANIELS uses yet another alias in addition to Harun Muhammad. Specifically, DANIELS has used the name Abu Yusuf ("Yusuf") when communicating electronically with an FBI Undercover Employee ("UCE"). YUSUF told a UCE that his email address is harunmuhammad443@XXXXX.com. For all these reasons, your Affiant believes that Aaron DANIELS, Harun Muhammad and Abu Yusuf are the same individual.

**DANIELS' INTEREST IN VIOLENT JIHAD**

10. Beginning in at least September of 2015, and prior to coming into contact with an FBI UCE, DANIELS expressed his interest in violent jihad in various communications.

11. On or about September 23, 2015, DANIELS sent an electronic communication entitled "Ambitions for Jihad." In that electronic communication, DANIELS, who identified himself as Harun Muhammad, indicated his desire to travel to Afghanistan and engage in violent jihad, but requested financial and logistical support in doing so. DANIELS sent three additional electronic communications to the same electronic address between September 23, 2015 and October 1, 2015 expressing these same interests and need for support.

12. On or about October 7, 2015, DANIELS sent an electronic communication seeking assistance in traveling to Syria to conduct violent jihad and expressed a desire to stop the Russian-Iranian "onslaught on our people." When asked to provide contact information in

addition to his email address, DANIELS provided his phone number of 614-816-XXXX and the Facebook username of Harunmuhammad.

13. On or about October 8, 2015, DANIELS sent an electronic communication to an organization seeking funding to travel to Syria "to do jihad" against the enemies of Islam.

14. On or about October 15, 2015, DANIELS sent an electronic communication to an individual requesting logistic and financial support to travel to Afghanistan so that DANIELS could "do jihad."

**MATERIAL SUPPORT TO ISIL**

15. In January of 2016, and prior to coming into contact with an FBI UCE, DANIELS provided $250 to ISIL recruiter and attack planner, Abu Isa Al-Amriki, AKA Abu Saad Al-Sudani (hereinafter referred to as "Al-Amriki"). As discussed herein and based on my training and experience, I know that Al-Amriki was an ISIL member, recruiter, and external attack planner who is now deceased.

16. An FBI review of Western Union records revealed that on January 29, 2016, DANIELS sent $250.00 via the "westernunion.com" portal to Person A (whose true identity is known to the FBI) in Beirut, Lebanon, and who as demonstrated below, was an intermediary for Al-Amriki. The transfer was sent from the Western Union account of Harun Muhammad. Furthermore the Western Union records list DANIELS' checking account debit card (which is in DANIELS' own name) as the funding source for the Western Union Account of Harun Muhammad. Additionally, DANIELS' known address, correct telephone number, and his date of birth are all listed in the aforementioned Western Union account profile. Finally, the Western Union records list the email account harunmuhammad443@XXXXX.com as a point of contact

for the owner of the account. On February 1, 2016, harunmuhammad443@XXXXX.com received an email from westernunionresponse@westernunion.com verifying that the $250.00 transfer had been picked up by Person A.

17. As part of an ongoing investigation and after DANIELS sent the $250 to ISIL, DANIELS has been in electronic communication with an FBI UCE regarding DANIELS' interest in violent overseas jihad. During these communications, and in an effort to convince the UCE of DANIELS' commitment to violent oversees jihad, DANIELS stated that he had given funds, via Western Union, to Al-Amriki, a known ISIL operative. DANIELS stated that Al-Amriki instructed him to send the money via Western Union to Person A. Furthermore, DANIELS told the UCE that harunmuhammad443@XXXXX.com was his email address.

18. On or about June 3, 2016, the UCE asked DANIELS why he wanted to go overseas and what group he wanted to join. DANIELS replied that originally he wanted to go "to Asham to support the cause of Allah," but had heard that it was "closed." Based on your Affiant's training and experience, I believe the term "Asham" to be a reference to Syria, portions of which are controlled by ISIL. DANIELS then said that "brother Abu Isa told me it was closed at the time…and suggested that I go to Libya their [sic] to support Allah's jihad and Khilafah." Your Affiant believes "Abu Isa" to be a reference to Al-Amriki, and "Khilafah" to be a reference to the "caliphate," which ISIL purports to have established. This exchange evidences DANIELS' understanding that Al-Amriki was an ISIL operative.

19. On or about June 6, 2016, a UCE asked DANIELS to clarify which "Abu Isa" he was talking about and DANIELS confirmed that he was referring to Al-Amriki. On June 15, 2016, a UCE inquired as to which group DANIELS wanted to join in Libya. DANIELS

responded that he wanted UCE assistance to help him go to "waliyat baraqah so I could support the jihad there." Based on training and experience, your Affiant assesses "waliyat baraqah" to be a reference to ISIL or ISIL controlled territory. These statements by DANIELS evidence his interest in traveling to Libya for the purpose of engaging in violent jihad on behalf of ISIL.

20. On or about June 16, 2016, the UCE asked DANIELS what he has done to show his commitment for violent overseas jihad. Subsequently, on or about June 17, 2016, DANIELS replied that he had given money to Al-Amriki, the well-known and now deceased ISIL operative. Your Affiant concludes that this is a direct reference to a Western Union transfer of money to Al-Amriki by DANIELS. DANIELS further stated to the UCE on or about June 27, 2016 that Person A was "the receiver Abu Isa told me to send the money to on western union."

21. DANIELS and the UCE also discussed DANIELS' travel plans for hijrah for the purpose of violent jihad overseas. For example, on or about November 1, 2016, the UCE inquired why DANIELS wanted to travel to Trinidad and how did it fit into DANIELS' plan. DANIELS responded on November 2, 2016 that he "wanted to go their [sic] so the kuffar don't track me as if I was to just to Tunisia from the united states." Your Affiant assesses that the term "kuffar" translates to "non-believer" and your Affiant assesses that, in this context, DANIELS was referring to U.S. law enforcement.

22. On or about November 5, 2016, DANIELS purchased an airline ticket to travel on United Airlines flight #4402 from Columbus, Ohio to Houston, Texas. DANIELS was then scheduled to depart Houston, Texas for Port of Spain, Trinidad and Tobago via United Airlines flight #1457. These flights were scheduled to depart on Monday, November 7, 2016.

23. On or about November 7, 2016, DANIELS arrived at the airport in Columbus, Ohio, which is within the Southern District of Ohio, and was arrested before boarding his outbound flight. Subsequent to his arrest, and after having been advised of his *Miranda* rights, DANIELS admitted to the FBI that his ultimate destination was Libya and that he intended to travel there for the purpose of joining ISIL. DANIELS further admitted to sending $250.00 via Western Union to Al-Amriki through Person A.

**CONCLUSION**

24. Based on the foregoing, your Affiant concludes that there is probable cause to believe that AARON DANIELS a/k/a Harun Muhammad a/k/a Abu Yusuf, knowingly provided, and attempted to provide, material support to ISIL, a designated foreign terrorist organization in violation of Title 18, United States Code, Section 2339B(a)(1), in the Southern District of Ohio.

Respectfully submitted,

Jonathan Bailey, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on 11/7/16:

HONORABLE TERENCE P. KEMP
UNITED STATES MAGISTRATE JUDGE

AO 245B (Rev. 02/18) Judgment in a Criminal Case
Sheet 1

EXHIBIT 4

# UNITED STATES DISTRICT COURT

Southern District of Ohio

UNITED STATES OF AMERICA
v.
Aaron T. Daniels

## JUDGMENT IN A CRIMINAL CASE

Case Number: 2-16-CR-222-01

USM Number: 76316-061

George Chaney, Jr.
Defendant's Attorney

## THE DEFENDANT:

☑ pleaded guilty to count(s) Count 2 of the Indictment

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☐ was found guilty on count(s) after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 2339B | Providing or Attempting to Provide Material Support to a Designated Foreign Terrorist Organization | 11/7/2016 | II |

The defendant is sentenced as provided in pages 2 through 1 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s) 1 of the Indictment ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

7/6/2018
Date of Imposition of Judgment

[signature]
Signature of Judge

Cheif Judge Edmund A. Sargus, Jr.
Name and Title of Judge

7-10-2018
Date

DEFENDANT: Aaron T. Daniels
CASE NUMBER: 2-16-CR-222-01

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

80 months

☑ The court makes the following recommendations to the Bureau of Prisons:

Defendant to be placed in a BOP facility closest to the Columbus, Ohio area

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

- ☐ at ____________ ☐ a.m. ☐ p.m. on ____________ .
- ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

- ☐ before 2 p.m. on ____________ .
- ☐ as notified by the United States Marshal.
- ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on ____________ to ____________

at ____________ , with a certified copy of this judgment.

____________
UNITED STATES MARSHAL

By ____________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: Aaron T. Daniels
CASE NUMBER: 2-16-CR-222-01

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

Life

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. ***(check if applicable)***
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. ***(check if applicable)***
7. ☐ You must participate in an approved program for domestic violence. ***(check if applicable)***

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: Aaron T. Daniels
CASE NUMBER: 2-16-CR-222-01

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________________ Date ______________

DEFENDANT: Aaron T. Daniels
CASE NUMBER: 2-16-CR-222-01

# ADDITIONAL SUPERVISED RELEASE TERMS

1) The defendant shall participate in a program of mental health assessment and treatment, including violent extremism and medication management, as directed by the U.S. Probation Office, until such time as the defendant is released from the program by the probation office. The defendant will make a co-payment for treatment services not to exceed $25 per month, which is determined by the defendant's ability to pay.

2) The defendant shall participate in a program of testing and treatment for alcohol and controlled substance abuse, as directed by the U.S. Probation Office, until such time as the defendant is released from the program by the probation office. The defendant will make a co-payment for treatment services not to exceed $25 per month, which is determined by the defendant's ability to pay shall provide all personal financial information upon request by the probation office.

3) The defendant shall refrain from knowingly meeting or communicating with any person with whom the defendant knows to be engaged, or planning to be engaged in criminal activity and from knowingly meeting or communicating with any persons who are, or claim to be, associated with a foreign terrorist organization (as defined in Title 18, United States Code, Section 1189).

4) The defendant shall surrender his United States Passport and shall not reapply for another passport or international travel document during the term of his supervised release.

5) The defendant shall inform the probation officer prior to purchasing a cellular telephone or any device that can access the internet; and creating new online accounts including email, social media, instant messaging, chat accounts or services. This information is also permitted to be shared with the United States Attorney's Office.

6) The defendant shall submit and/or surrender any media device, to which he has access and/or control, to a search based on reasonable suspicion of contraband or evidence of a violation of a condition of supervision. A media device is defined as, but not limited to, any device which is capable of accessing internet, storing images, text, or other forms of electronic communication.

7) The defendant shall submit to the installation of software to monitor computer activities on any computer the defendant is authorized to use at the defendant's expense. The software will record any and all activities on the defendant's computer. The software will be checked on a periodic basis. The defendant has no expectations of privacy regarding computer use or information stored on the computer and shall make other users of said computer aware of the monitoring software. The defendant understands that any information gathered by said software may be used against the defendant in subsequent Court actions regarding the defendant's computer use and the conditions of supervision. Furthermore, the defendant shall comply with the rules set forth in the Computer and Internet Monitoring Agreement and the Computer and Internet Acceptable Use Agreement as adopted by the Southern District of Ohio.

8) The defendant shall be subject to periodic polygraph examinations at the discretion and direction of the probation officer and at the defendant's expense, based on the probation officer's assessment of the defendant's ability to pay.

9) The defendant must at all times have a treating physician whose identity will be given to his probation officer. The defendant shall take any medication directed by his treating physician, including psychiatric drugs. The probation officer may at anytime require the defendant to submit to blood, urine or other tests to determine whether the defendant is taking such medications as prescribed.

10) Consistent with the Constitution the defendant, his dwelling and automobile may be subject to searching by his probation officer.

DEFENDANT: Aaron T. Daniels
CASE NUMBER: 2-16-CR-222-01

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until ________ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: Aaron T. Daniels
CASE NUMBER: 2-16-CR-222-01

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ 100.00 due immediately, balance due

☐ not later than ________, or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within ________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
one Nokia Lumia 635 Cellular phone with its contents, HP laptop including its contents, one PNY 8GB thumb drive including its contents, a Microsoft thumb drive including its contents and a black power cord,

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

**8/13/01: POLICY CHANGE RESTRICTING PUBLIC DISCLOSURE OF THE STATEMENT OF REASONS PAGE IN THE JUDGMENT**

DISTRIBUTION OF
THE JUDGMENT AND COMMITMENT
WITH THE STATEMENT OF REASONS PAGE
AND THE DENIAL OF FEDERAL BENEFITS
PAGE ***IS LIMITED TO***:

DEFENSE COUNSEL
UNITED STATES ATTORNEY
U.S.A.'s FINANCIAL LITIGATION UNIT
UNITED STATES PROBATION
UNITED STATES PRETRIAL
UNITED STATES SENTENCING COMMISSION
(IF A TERM OF IMPRISONMENT, THEN ALSO THE FEDERAL BUREAU OF PRISONS)

THE CLERK OF COURTS WILL MAINTAIN THE OFFICIAL VERSION
OF
***THE STATEMENT OF REASONS PAGE***
AND
***THE DENIAL OF FEDERAL BENEFITS PAGE***
SEALED IN A SECURE LOCATION SEPARATELY FROM
THE PUBLIC CASE FILE