IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 12-cr-00033-JLK-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JAMSHID MUHTOROV,

        Defendant.

---

**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT**

---

Jamshid Muhtorov respectfully submits the following objections to the presentence report (Doc. 1929, hereafter PSR).[1]

## I.  Procedural History.

Mr. Muhtorov was convicted of counts one, two and three of the superseding indictment. Each count dealt, generally, with attempting to provide material support to the I.J.U., a designated terrorist organization. The first two counts, one a conspiracy, focused on material support in the form of $300.00. The third involved an attempt to provide material support in the form of personnel, Mr. Muhtorov himself.

A fourth count alleged an attempt by Mr. Muhtorov to provide material support to the I.J.U. in the form of communications equipment and services. The jury found Mr. Muhtorov not guilty of that charge. Doc. 1898, verdict.

---

[1] "Doc." means the clerk's docket.

## II.     Disputed Portions of the PSR and Burden of Proof.

Under Federal Rule of Criminal Procedure 32(i)(3)(A), the Court may accept any undisputed portion of the presentence report as a finding of fact for purposes of determining an appropriate sentence. When a sentencing court is presented with a disputed portion of the presentence report, the Court may not simply rely on the disputed information without first finding that the contested assertion or conclusion is founded upon proof by a preponderance of evidence. See Fed.R.Cr.P. 32(i)(3)(B). See also *United States v. Rice*, 52 F.3d 843, 848 (10th Cir. 1995) (holding that when probation's conclusion as to a specific offense characteristic was contested, the Government bears burden to prove the amount of loss by preponderance of the evidence).

As a rule, "the government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases. This rule requires "neither party to prove the negative of a proposition." Id.

## III.    Objections that Affect the Advisory Guideline Range.[2]

### A.     PSR ¶ 35-35:  Objection to a 2-level enhancement pursuant to § 2M5.3(b)(1).

Paragraphs 34-35 of the PSR state the following:

"If the offense involved the provision of funds with the intent, knowledge, or reason to believe such funds would be used to purchase any of the items described in subdivisions (A) through (C); or (E) funds or other material support or resources with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act, increase by 2 levels. USSG § 2M5.3(b)(1).

---

[2] Mr. Muhtorov incorporates by reference the arguments pertaining to "Sentencing Computation" outlined in the "Defendant's Sentencing Statement" (Doc. 1949) at pages 16 through 29.

According to the Government's Sentencing Statement, evidence at trial shows the defendant had a reason to believe the funds he sought to provide to the I.J.U. would be used to obtain dangerous weapons or firearms, and the funds would be used to assist in the commission of violent acts. He sought to provide himself as personnel to the I.J.U. and expressed his desire to participate in violent acts himself. He spoke of the duty to participate in the "wedding," meaning violent jihad. Accordingly, 2 levels are added."

The information contained in the PSR, as adopted from the "Government's Sentencing Statement" (Doc 1927, hereafter "Statement"), is inadequate to satisfy the government's burden for a 2-level enhancement pursuant to § 2M5.3(b)(1). This adjustment applies only if the government proves by a preponderance of the evidence that Mr. Muhtorov attempted to provide $300.00, or himself, to the I.J.U. "with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act." *Id*.

While "Section 2M5.3(b)(1)(E) . . . does not require . . . that support be . . . designed to lead to a specific act of violence . . . it does require is that the defendant[] be shown to have intended, known, or had reason to believe that [the] support *would be used* to assist in acts of violence by the terrorist organization." *United States v. Dhirane*, 17-4205, 2018 WL 3421085, at *7 (4th Cir. July 16, 2018) (emphasis added) (§ 2M5.3(b)(1)(E)) application upheld when defendants' support was "directed at and designed to support al-Shabaab's [a terrorist organization] military operations in fighting a war of terrorism in Somalia and Kenya.")

    **1.**  **$300.**

The evidence does not prove, by a preponderance, that Mr. Muhtorov had reason to believe any funds he might have hoped to provide to the I.J.U. would be used to commit or assist in the commission of violent acts. Furthermore, the evidence does not prove, by a

preponderance, Mr. Muhtorov intended or had reason to believe financial support *would* be used, was directed at and designed to support acts of violence – as opposed to being intended to provide non-violent help to women and children. The adjustment under § 2M5.3(b)(1)(E) does not apply.

## 2.   Personnel.

The evidence does not prove, by a preponderance, that the enhancement applies to sentencing on the "personnel" charge because Mr. Muhtorov "expressed his desire to engage in violent acts himself." Statement, p. 9.  What must be proved is that Mr. Muhtorov intended his work, as personnel, *would* (was directed at and designed to) support acts of violence.

The government concedes that Mr. Muhtorov had "reason to believe" the use to which he *would* be put by the I.J.U. was as a propagandist or recruiter performing either role does not involve acts of violence.  Id.  The information in the PSR does not satisfy the government's burden for a 2-level enhancements pursuant to § 2M5.3(b)(1).  It should not be applied.

**B.   PSR ¶ 35:  Objection to a 12-level enhancement pursuant to § 3A1.4(a).**

Paragraphs 36-37 of the PSR state the following:

"If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, 12 levels are added. If the resulting offense level is less than level 32, increase to level 32. USSG § 3A1.4(a).

A federal crime of terrorism is an offense "intended to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and is a listed offense under 18 U.S.C. § 2332b(g)(5). According to the Government's Sentencing Statement, "the record is replete with evidence that MUHTOROV intended to retaliate against the actions of both the Uzbek and United States Government." The defendant told his daughter to

pray he becomes a martyr. He told the CHS he wanted to fight and be a martyr for the cause, and he stated he had a vision of having a Quran in one hand and a weapon in the other. The defendant's offense of conviction is a listed offense under 18 U.S.C. § 2332b(g)(5). Accordingly, 12 levels are added."

The information contained in the PSR, as adopted from the "Statement", is inadequate to satisfy the government's burden for 12-level enhancements pursuant to § 3A1.4(a).[3]

U.S.S.G. § 3A1.4 applies to the guidelines calculations if the predicate offense either (1) "involves" a federal crime of terrorism, or (2) was "intended to promote" a federal crime of terrorism. *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010).

"[A] defendant's offense 'involves' a federal crime of terrorism when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)." *United States v. Awan, supra* at 313.[4] To satisfy the first of the two prongs for application of § 3A1.4, the evidence must prove, preponderate, that Mr. Muhtorov had the specific intent to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.[5]

---

[3] Mr. Muhtorov filed a separate pleading, Doc. 1918, <u>Defendant's Memorandum Regarding Sentencing Guidelines, etc</u>., arguing against applying the terrorism enhancement. The Court, in its Memorandum Opinion and Order on Sentencing in Mr. Jumaev's case, Doc. 1920, explained its reasons for not applying the enhancement to his sentencing.

[4] All three of Mr. Muhtorov's offenses of conviction are listed in § 2332(g)(5)(B). However, as the Court noted in the Jumaev Memorandum, that an offense of conviction is "listed," does not end the inquiry on the "involved" prong. Doc. 1920, pp. 10-11.

[5] The term "government" as used in § 2332b(g)(5) includes both U.S. and foreign governments. *United States v. Aref*, 2007 WL 804814, at *2 (N.D.N.Y. Mar. 14, 2007). And, it does not appear to matter how awful the "government" may be. "Congress did not intend for a United States district court judge to determine whether a foreign state is complying in full with its international obligations before determining whether a person guilty of providing support to a foreign terrorist

The government's claim that Mr. Muhtorov sought "retaliation against the U.S. government" fails.  They claim that Mr. Muhtorov expressed his anger with the U.S. government (Statement, p. 10.); however, expressions of anger are not proof - by a preponderance – of a specific intent to retaliate against United States government conduct.

The government also claims Mr. Muhtorov had a "desire" to participate in "the fighting." (*Id.*); however, the fair inference from the trial record is Mr. Muhtorov's beef was with Uzbekistan, not the United States.  Further, "desire" is not the same as a specific intent, especially when Mr. Muhtorov *knew,* before his attempt to travel, that the "brothers" in the "nearly defunct" (Doc. 1920, p. 12) I.J.U. told him he would not be going to a wedding but instead would be a propaganda person or a recruiter.

Additionally, the evidence did not establish, by a preponderance, that Mr. Muhtorov specifically intended, by supplying money or himself, to influence or affect the conduct of the *U.S.* government by intimidation or coercion, or to retaliate against U.S. government conduct.  Nor did the evidence preponderate that Mr. Muhtorov had the specific intent to influence or affect the conduct of the Karimov regime "by intimidation or coercion," or to retaliate against its conduct.

There is a lack of proof on one of the two necessary elements of the "involved" prong of § 3A1.4, namely proof by a preponderance of the evidence that [the defendant] had the specific intent to commit an offense 'calculated to influence or affect the conduct of [a] government by intimidation or coercion, or to retaliate against [a] government['s] conduct.'"

    **1.**    **"Intent to promote".**

---

organization is subject to § 3A1.4." *United States v. Assi*, 428 Fed. Appx. 570, 575 (6th Cir. 2011). That Mr. Muhtorov hoped for the fall of one of the world's most brutal dictators may, however, be relevant to § 3553(a)'s analysis of the "nature and circumstances of the offense."

If proof is lacking that the predicate offenses "involve" a federal crime of terrorism, U.S.S.G. § 3A1.4 may still apply if the offenses were "intended to promote" a federal crime of terrorism. The '"intended to promote' prong applies where the defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism." *Awan, supra*, at 314. It is "applicable in some circumstances in which the 'involved' prong is not, *i.e.*, where the defendant's offense or relevant conduct does not include a federal crime of terrorism." *Id* at 314.

The facts in Mr. Muhtorov's case differ from Mr. Jumaev's. But what the evidence showed was while Mr. Muhtorov may have wanted to support the I.J.U. by giving the group money, it doesn't show he ever did or even knew how to (or how to attempt to) do so.

Nor did the evidence establish by a preponderance that supplying himself as material support was with the requisite intent. According to the I.J.U.'s public statement, Mr. Muhtorov knew, before he even attempted to fly out of O'Hare Airport for Istanbul, that he was a rejected suitor. He was "offended" by the I.J.U.'s lack of enthusiasm. He could not have intended to provide himself to the I.J.U. when he knew they would not have him.

**C.     PSR ¶ 39-40: Objection to a 2-level enhancement pursuant to § 3C1.1.**

Paragraphs 39-40 of the PSR state the following:

"In his testimony at trial, the defendant maintained that the $300 he was given from Jumaev was repayment of a debt and not intended for the I.J.U. He stated he continued to assist the I.J.U. to earn their trust as part of a fantasy persona. The defendant denied traveling in order to join the I.J.U. The government maintains these statements contradict the evidence at trial and amounts to perjury.

While this application does appear to be warranted based on the language in the application note, as the Court heard the testimony at trial, the Court is in the best position to determine if the defendant's conduct rises to perjury. USSG §3C1.1."

The information contained in the PSR, as adopted from the "Government's Sentencing Statement", is inadequate to satisfy the government's burden for 2-level enhancements pursuant to § 3C1.1.

A defendant's "testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *See United States v. Smith*, 62 F.3d 641, 647 (4th Cir. 1995) ("An enhancement under § 3C1.1 does not apply automatically every time a criminal defendant who testifies at trial is convicted. It may be that the defendant's specific statements on the stand were true, or were not intentionally false, or were not material.").

"[I]f a defendant objects to a sentence enhancement resulting from [his] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same…" *Dunnigan, supra*, at 95.[6]

In guideline terms, and as it relates to the government's attempt to punish Mr. Muhtorov for "obstruction" based on a claim he perjured himself while testifying, that attempt must fail as

---

[6] The Tenth Circuit's standards are stricter than those expressed in *Dunnigan. United States v. Hawthorne*, 316 F.3d 1140, 1146 (10th Cir. 2003). *See United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995)(If the 3C1.1 enhancement is based on trial testimony, the district court must make specific findings – independent of the jury verdicts -- as to the elements of perjury and specifically identify the statements it concludes were perjurious.).

the government has not met its burden of proof with either the requisite specificity or by a preponderance of the evidence.[7]

### D.     PSR ¶ 43:  No adjustment for acceptance of responsibility § 3E1.1.

The PSR does not apply a reduction of the offense level for acceptance of responsibility, "[a]s he proceeded to trial." Mr. Muhtorov objects to this as being a "trial tax." *See* Defendant's Sentencing Statement, Doc. 1949, p. 22 n. 24. The commentary to § 3E1.1 explicitly provides that "Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." See *United States v. Schultz*, 917 F. Supp. 1343, 1354 (N.D. Iowa 1996) (Defendant's decision to take this case to trial does not necessarily stand as an impediment to the requested sentence reduction.).

> The district court is in a unique position to evaluate whether a defendant has accepted responsibility *for his acts*, and this determination is entitled to great deference on review." Its conclusion will therefore stand unless it lacks foundation.

*United States v. Miller*, 22 F.3d 1075, 1081 (11th Cir. 1994) (emphasis added. Citing *United States v. Pritchett*, 908 F.2d 816, 824 (11th Cir.1990)).

Mr. Muhtorov testified at trial about his "acts," including getting Mr. Jumaev to send him $300.00, communicating with sodiqlar.com, having disturbing videos on his phone, knowing the

---

[7] *United States v. Smith*, 62 F.3d 641, 646–47 (4th Cir. 1995) (the government cannot secure a sentencing enhancement on the grounds of perjury unless it proves each of the elements of perjury -- (1) false testimony (2) concerning a material matter (3) given with the willful intent to deceive  -- by a preponderance of the evidence.).

I.J.U. was a terrorist group, and other subjects offered by the prosecution in its case in chief.[8] The point is that Mr. Muhtorov admitted "acts" relevant to the elements of the offenses while disputing the intent behind them.

A passage from *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), mentioned in his Sentencing Statement opposing the § 3C1.1 enhancement, is equally apt here:   A defendant's "testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *Id*.

Mr. Muhtorov should receive a two-level reduction under § 3E1.1.

### E.     PSR ¶ 101:   Departures.

Mr. Muhtorov agrees with the Probation officer's suggestion that there is a basis for downward departure under § 4A1.3 because Criminal History Category VI substantially over represents the seriousness of his record or the likelihood he will commit other crimes. *See* Defendant's Sentencing Statement, Doc.1949, p. 29.

As he argued in his Sentencing Statement, there is a basis for downward departure under § 5H1.11, exceptional public service. He incorporates that argument here. *Id*. pp 30 *et seq*.

---

[8]  Just a few examples of "acts" Mr. Muhtorov admitted from cross-examination: He communicated with the I.M.U. and the I.J.U., trying to gain the latter group's "trust." R.T. June 7, 2018, pp. 1235-6.  He attempted to provide the I.J.U. with information when the website administrator asked him to. *Id*. He downloaded videos from the website. *Id*., p. 1239.  He told the CHS that the I.J.U. wanted information about satellite phones. *Id*. p 1240. He believed the CHS was a supporter of the I.J.U. *Id*. pp 1241-3. He told Mr. Jumaev about sodiqlar (the I.J.U.) needing money, "and in this way I asked him for money." *Id*. 1243.  And, "[t]he administrator of that website wrote me about a year earlier that they needed money. That they were in financial need." *Id*. 1245. He spoke with Mr. Jumaev about the "terrorist propaganda videos." *Id*. 1245. He had an argument with Mr. Halikul where he (Mr. Muhtorov) supported the I.J.U. or I.M.U. terrorist point of view. *Id*. 1248.

### F.     PSR ¶ 102:   Variance.

Mr. Muhtorov concurs with the Probation Officer's suggestion there are (or "may be" as the Probation officer puts it) reasons for the Court to vary to a sentence below what the Guidelines suggest. The arguments he makes for a variance are contained in his Sentencing Statement, Doc. 1949, in the Sentencing Factors section pp. 32 *et seq*.

### SENTENCING RECOMMENDATION

Mr. Muhtorov acknowledges the thoughtful analysis of the Probation Officer in the "Justification" section of the PSR in support of the sentence recommended, fifteen years, half what the prosecution seeks.  Mr. Muhtorov, however, contends that the sentence that is sufficient, but not greater than necessary, is one of time served, or 79 months. *See* Defendant's Sentencing Statement, Doc. 1949.

Respectfully submitted,

*/s/ Brian R. Leedy*
Brian R. Leedy
Haddon, Morgan & Foreman P.C.
150 E. 10th Ave
Denver CO, 80203
(303) 831-7364
Email Address:  bleedy@hmflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

**Gregory Allen Holloway**
  Email: Gregory.Holloway@usdoj.gov
**David Alan Tonini**
  Email: David.Tonini@usdoj.gov
**Beth Gibson**
  Email: Beth.Gibson@usdoj.gov
**Julia K. Martinez**
  Email: Julia.Martinez@usdoj.gov
**Kathryn J. Stimson**
  Email: kstimson@hmflaw.com
**Brian Rowland Leedy**
  Email: bleedy@hmflaw.com
**Patrick C. Toomey**
  Email: ptoomey@aclu.org
**Jacob R. Rasch-Chabot**
  Email: Jacob_Rasch-Chabot@fd.org
**David Barry Savitz**
  Email: savmaster@aol.com
**Mitchell Baker**
  Email: mitchbaker@estreet.com

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Michelle D. Means, U.S. Probation officer
Email: michelle.means@cod.uscourts.gov

Jamshid Muhtorov  via hand delivery

Respectfully submitted,

/s/ Brian R. Leedy
Brian R. Leedy
Haddon, Morgan & Foreman P.C.
150 E. 10th Ave
Denver CO, 80203
(303) 831-7364
Email Address: bleedy@hmflaw.com